[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 733 
The appellant was indicted on charges of unlawful possession of a controlled substance and unlawful possession of drug paraphernalia. He was found guilty at trial on the controlled substance charge and was sentenced to 6 years' imprisonment. He was also ordered to pay a fine of $2,000.
Evidence at trial tended to show that, on July 27, 1995, based upon information from a confidential informer, a sheriff's investigator obtained a search warrant for the appellant's residence in Jackson's Gap. Officers seized numerous items, including two razor blades, a straw, and a plastic bag containing cocaine residue, and five Lortab tablets. The appellant was arrested on October 26, 1995.
 I.
The appellant contends that the trial court erred in refusing to suppress the evidence seized under the theory that it represented fruits of the officers' search because, he says, the affidavit supporting the warrant was deficient. Specifically, he argues: (1) that the warrant was anticipatory and the affidavit improperly failed to establish that the cocaine was in the appellant's possession when the warrant was issued, see Ex parteOswalt, 686 So.2d 368 (Ala. 1996); (2) that the affidavit failed to disclose the basis of the informer's knowledge and evidence of his reliability; and (3) that the scope of the search exceeded the bounds of the warrant with regard to the Lortab tablets because the warrant was directed only to "cocaine and/or crack cocaine," and the tablets were not in plain view, and there was no evidence that the officer knew what they were when he seized them.
A sheriff's investigator informed the district judge that he had been told by a confidential informer that the appellant and four others would be taking delivery of approximately three kilograms of cocaine in Alabama but outside Tallapoosa County on July 27. He also told the judge that the appellant and the others would then proceed to the appellant's residence in Jackson's Gap, where, "[s]ometime after dark on that evening," they would cook the cocaine into crack. At 11:30 p.m., the district judge issued a warrant for a nighttime search of the appellant's residence. Although the language of the warrant did state that the search was to take place sometime after dark on that evening, the rendition of the facts indicated that the appellant would have been in possession of the narcotics before that time, as he had originally taken possession of them outside Tallapoosa County. Thus, the appellant had committed the offense of possession of cocaine before the warrant was issued, which satisfies the two prongs of Rule 3.8, Ala. R.Crim.P., as well as subsections (1) and (2) of § 15-5-2, Code of Alabama 1975, i.e., the evidence to be seized be presently in possession of the person whose premises are to be *Page 734 
searched, and that the crime to which the evidence related had occurred. Cf. Ex parte Oswalt, supra, and Ex parte Wright,709 So.2d 1111 (Ala. 1996) (in both cases, the anticipatory search warrant was invalid because the offense had not yet occurred at the time of issuance of the warrant and the defendants, at the time of issuance, were not yet in possession of the evidence). Although the warrant did not specifically state that it was to be executed upon or after the arrival of the appellant and the cocaine, the warrant was not so deficient that the executing officer, who also was the affiant, could not reasonably rely upon it. Evidence obtained by officers acting in objectively reasonable reliance on a warrant issued by a neutral and detached magistrate need not be excluded, even if the warrant is ultimately found to be invalid. United States v. Leon,468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).
With regard to the basis of knowledge and reliability of the confidential informer, the good-faith exception also applies. The affidavit stated only that the informer's knowledge was "first-hand," and his reliability apparently could not be proven because he was providing information for the first time. However, he offered very specific details with regard to the seller and his vehicle, the circumstances of the transaction, the location to which the cocaine was to be taken, and the identities of the six participants in the transaction. In addition, the appellant and two of the participants were known by the affiant to have prior drug convictions, and the affiant had received similar information regarding the circumstances of the transaction from other informers who were known to be reliable. Therefore, the affidavit was not so lacking in probable cause that the officers could not, in good faith, rely upon it.
With regard to the scope of the search, Officer Phillip Weddle testified that he found the white envelope containing the Lortab tablets concealed under a mattress in the first bedroom, along with a letter addressed to the appellant and a medical prescription made out for the appellant for an X-ray. The officers did not find a prescription for Lortab or bottle containing Lortab. Officer Weddle looked inside the envelope to determine whether it contained crack cocaine. Upon observing prescription-type tablets, unaccompanied by a prescription, he reasonably seized the tablets as contraband. It was not necessary for the warrant to specifically include Lortab tablets because items recognizable as contraband, fruits, or instrumentalities of a crime may be seized even if not specified in the warrant.
 II.
The appellant contends that the trial court's comments during voir dire, that "jurors must be `absolutely 50-50' as to the guilt or innocence" of the appellant, were "a tacit instruction that the presumption of innocence did not exist." He argues that the court's proper instructions to the jury at the end of the trial came too late to cure the error.
The record reveals that the comments at issue were made during the individual voir dire of jurors 55 and 128. The appellant was not prejudiced by the court's statement to juror number 55 because, at the time the appellant objected, the court had already made a similar statement to the juror six times without objection. In addition, the court specifically stated that the comment was designed to determine whether the juror could be "absolutely fair and impartial as between the state and the defendant." The trial judge did not express his personal belief as to the appellant's guilt or innocence. With regard to juror number 128, the appellant did not object in any way to the comment of the trial court. Moreover, the jury strike sheet and the venire list reflect that juror number 55 was struck by the State and that juror number 128 was excused from service. Based on the record, no substantial right of the appellant was affected by the statements of the trial court. Therefore, the error, if any, was harmless. Rule 45, Ala. R.App.P.
 III.
The appellant contends that his right against self-incrimination was violated when the State attempted to elicit from a police officer booking information provided by the appellant. He argues that the information in question was taken without advising him of *Page 735 
his Miranda rights and that it was then used to prove an essential element of the offense.
The information at issue concerned the fact that during the booking process, the appellant had given the address of the search as his own address. The trial court noted that the address was standard identifying information and that it was the court's intention to admit the evidence in question. However, the record reveals that the prosecutor did not thereafter question the officer with regard to the address given by the appellant and that this information was not admitted into evidence. Therefore, the appellant could not have been prejudiced on this ground.
 IV.
The appellant contends that his right against self-incrimination was violated when an officer testified that he had "attempted to take" a statement from the appellant. The appellant argues that the trial court should have granted his motion for a mistrial because, he says, the officer's testimony constituted a comment on the appellant's "refusal to give a statement to police." He also argues that the State failed to meet its burden of proof with regard to Miranda warnings because he refused to sign a written waiver of rights form.
The appellant's argument is not supported by the record. The trial transcript reveals that Officer Weddle was asked if he had had an occasion to take a statement from the defendant during the evening of the search. He responded, "I attempted to take one, yes sir, " and the trial court then cautioned him that he could not testify with regard to a refusal to give a statement. The officer did not testify further with regard to a statement at that time. He later was recalled and clarified his previous testimony. He testified as follows: Shortly after the execution of the search warrant, the appellant voluntarily came to the Sheriff's Department; he was not under arrest at that time and he was advised of his Miranda rights. The appellant then stated to Officer Weddle, "I don't have anything I can tell you. I have a cocaine problem and I have to support my habit." The officer recorded the statement on the arrest report, which was not offered in evidence. Officer Weddle's testimony referred to the appellant's oral statement to him; therefore, it was not improper. Because the appellant was not in custody and because he had been advised of his Miranda rights, his refusal to sign a written waiver form did not render his oral statement inadmissible.
 V.
The appellant contends that the trial court erred in denying his motion for a mistrial because a State's witness testified that the searched residence had been "mentioned" as the scene of "drug activity." He argues that the curative instruction given by the court was insufficient to "unring the bell."
The record reveals that, when the appellant objected to the witness's testimony and moved for a mistrial, the trial court sustained the objection and then immediately instructed the jury as follows: "Ladies and gentlemen, just ignore that please. Don't pay any attention to it. That has nothing to do with this case."
A mistrial is a drastic remedy that should be used only to prevent manifest injustice. Ex parte Thomas, 625 So.2d 1156 (Ala. 1993). The trial court is in the best position to determine the effect of a remark upon the jury and whether a mistrial should be granted. Dixon v. State, 476 So.2d 1236 (Ala.Cr.App. 1985). There is no evidence in the present case that the trial court abused its discretion by determining that any prejudice to the appellant could be cured by an appropriate instruction.
 VI.
The appellant contends that the trial court erred in admitting certain evidence which, he says, was irrelevant and prejudicial. Specifically, he argues that the court should not have admitted the following items: two safety razors, a life insurance policy bearing his name, photographs of $1,400 in cash and the cash itself, four women's rings, a small quantity of food stamps, brass knuckles, an unlabeled pill bottle wrapped in tape, and a rights waiver form. He argues that the items were admitted for the "obvious *Page 736 
purpose" of showing that he was a drug dealer, rather than a mere possessor of drugs.
With regard to the first five items, the razor blades clearly were relevant, because they were listed in the appellant's indictment on the drug paraphernalia charge. The life insurance policy also was relevant, with regard to whether the appellant lived in the searched residence. The cash, rings, and food stamps were items that reasonably could have been received in exchange for cocaine, and they were found in the same location as the brass knuckles, a weapon.
In Rowell v. State, 666 So.2d 830 (Ala. 1995), the appellant, who was charged with, and convicted of, possession of cocaine, argued that evidence of a telephone pager and $800 in cash hidden in the trunk of his car was improperly admitted because, he argued, they supported the inference that he was involved in a drug sale rather than the mere possession of drugs. The Alabama Supreme Court rejected this argument, stating:
 "This position is inconsistent with Alabama cases in which evidence of drug sales or drug use was admitted as circumstantial evidence indicating that the defendant constructively possessed a controlled substance. See Robinette v. State, 531 So.2d 697
(Ala. 1988); Garner v. State, 606 So.2d 177
(Ala.Crim.App. 1992); Woods v. State, 437 So.2d 636
(Ala.Crim.App. 1983); Reed v. State, 401 So.2d 131
(Ala.Crim.App. 1981); Smith v. State, 351 So.2d 668
(Ala.Crim.App. 1977). Judge Bowen dissented from the judgment reversing Rowell's conviction. We agree with Judge Bowen's statement that `[e]vidence that the defendant was involved in the sale of drugs may be highly material and relevant in a prosecution for possession of a controlled substance.' [Rowell v. State] 666 So.2d [825] at 829 [(Ala.Cr.App. 1993)]. Judge Bowen stated, `In another context, [the Court of Criminal Appeals] has observed that possession and sale constitute "inevitably or necessarily incidental" conduct,' citing Tyler v. State, 587 So.2d 1238, 1242 (Ala.Crim.App. 1991). See also Woods v. State, 437 So.2d 636 (Ala.Crim.App. 1983); Pinson v. State, 52 Ala. App. 444, 446, 293 So.2d 869
(1974)."
Ex parte Rowell, supra at 831-32.
The appellant in this case was not found in actual physical possession of any of the articles charged in the indictments. When constructive possession is relied upon, the State must adduce some facts from which the jury can find that the accused had knowledge of the controlled substance. Ex parte Story,435 So.2d 1365 (Ala. 1983). Here, items commonly used in incidental conduct were found in close proximity to items belonging to the appellant, tending to show that the appellant had knowledge of the cocaine and paraphernalia that he was charged with possessing. Therefore, these items were relevant evidence and were properly admitted by the trial court.
With regard to the final two items — the pill bottle and the waiver form — the appellant has not shown that his substantial rights were injuriously affected by their admission. Therefore, the admission of these items is not a ground for reversal. Rule 45, Ala. R.App.P.
 VII.
The appellant contends that the trial court erred in failing to give a curative instruction after the prosecutor "expressed his personal belief in the guilt" of the appellant. He argues that the comment was uncorrected by the trial court and was so prejudicial that reversal is required.
However, the appellant's argument cannot be considered on appeal. The trial transcript reveals that the prosecutor stated, "And I would like to argue to you at this point why I believe the defendant is guilty of what he is charged with"; the appellant objected that "the belief of the prosecuting attorney is specifically excluded from argument before the jury." The trial court stated, "That's correct, " and instructed the prosecutor that he could say it another way. The prosecutor then apologized to the court.
Nothing further appears in the trial transcript with regard to the comment made by *Page 737 
the prosecutor.[1] Appellate review is limited to rulings invoked on the trial level. Cross v. State, 536 So.2d 155
(Ala.Cr.App. 1988). In the present case, there is no adverse ruling, such as the denial of a request for a curative instruction or a motion for mistrial, from which the appellant can appeal.
AFFIRMED.
All Judges concur.
[1] The record does contain the appellant's motion for a new trial, which states that the trial court "erred in refusing to grant a mistrial following the prosecutor's personal expression of belief in [the appellant's] guilt. . . ." However, there is nothing in the record that reflects that a motion for mistrial was made.