WISE, Presiding Judge.
The appellee, O.R.J., was indicted for unlawful possession of a controlled substance and first-degree unlawful possession of marijuana.[1] O.R.J. moved to suppress evidence law enforcement officers seized pursuant to a warrantless search of his vehicle and statements he made to officers after he was arrested. After conducting a hearing, the trial court granted O.RJ.’s motion to suppress. This appeal by the State followed.
The State argues that the trial court erroneously granted O.R.J.’s motion to suppress the evidence law enforcement officers seized pursuant to a warrantless search of his vehicle. Specifically, it contends that, because they could smell the odor of marijuana coming from his vehicle and because O.R.J. was acting suspiciously and gave a false name and false date of birth, the officers had probable cause to search his vehicle.
During the suppression hearing, Officer Howard Lawhorn of the Montgomery Police Department testified that, on November 14, 2008, while they were preparing to set up a checkpoint, he and other officers stopped O.R.J.’s vehicle because he was playing his music too loudly. They told O.R.J. to stay in the vehicle, but he got out and started walking away from them, *1000 which Lawhorn described as “kind of suspicious.” (R. 6.) O.R.J. then turned around, and the officers started asking him questions. Lawhorn testified that O.R.J. did not have any identification on him and that he gave them a false name at first. He also testified that they were about five feet away from the vehicle and that O.R.J. was close enough to get back into the vehicle at that time if he wanted to. Finally, he testified that they smelled the odor of marijuana coming from the vehicle and that another officer entered the vehicle.
Officer M.A. Jones of the Montgomery Police Department testified that he was on duty with Lawhorn on November 14, 2008, when Corporal Deramus initiated a stop of O.RJ.’s vehicle. After the vehicle stopped, O.R.J. got out and started walking away, but Deramus instructed him to get back to the vehicle, and he did.
Jones testified that O.R.J. was extremely nervous and was looking away, that he could not answer any questions, and that he gave them a false name and a false date of birth. He also testified that O.R.J. was jittery and started sweating. Jones testified that O.R.J. was detained but not in custody and that he could have gotten back into the vehicle at that time.
Jones testified that he and Deramus entered the vehicle to perform a wingspan search and to look for identification because O.R.J. had been lying about his identity. They smelled the strong odor of marijuana in the vehicle, found an item with O.R.J.’s name on it, confirmed his identity, and then found narcotics in the vehicle. At that point, they handcuffed O.R.J. and placed him in a patrol vehicle. While the officers were checking him through their computer system, O.R.J. got out of the vehicle and ran up the street.
At the end of Jones’s testimony, the following occurred:
“THE COURT: Anything else other than — that suggested that he committed a crime or was about to commit a crime or doing anything illegal?
“THE WITNESS: His actions, his mannerism while he was speaking with Corporal Deramus and myself.
“THE COURT: What was that?
“THE WITNESS: He was extremely nervous.
“THE COURT: Was this daytime or nighttime?
“THE WITNESS: It was nighttime, sir.
“THE COURT: This is on Gaston Avenue?
“THE WITNESS: Correct, sir.
“THE COURT: Everybody over there when a police officer stops them will act nervous.
“THE WITNESS: Corporal Deramus is a black officer, Judge.
“THE COURT: Well, I don’t care if he is black or white, they are just going to act nervous. Ain’t no question about that. But he hadn’t done anything else to show that he had committed a crime?
“THE WITNESS: He attempted to get away from the vehicle before Corporal Deramus could get to him.
“THE COURT: What you mean? How did that happen?
“THE WITNESS: As soon as Corporal Deramus initiated his emergency equipment, he immediately pulled over into a parking lot, got out of his vehicle and attempted to walk away.
“THE COURT: Y’all stopped him?
“THE WITNESS: Yes, sir.”
(R. 18-19.) Later, the trial court granted O.RJ.’s motion to suppress without any further explanation.
In State v. Hill, 690 So.2d 1201, 1203-04 (Ala.1996), the Alabama Supreme *1001 Court stated the following with regard to standards of review to be applied when reviewing a trial court’s ruling on a motion to suppress:
“As a preliminary matter, we note that there has been some debate regarding the applicable standard of appellate review. In its unpublished memorandum, the Court of Criminal Appeals showed great deference to the trial court’s decision to suppress the evidence of the cocaine and marijuana. It stated:
“ ‘[A] trial court’s ruling on a motion to suppress will not be disturbed unless it is “palpably contrary to the weight of the evidence.” Patterson v. State, 659 So.2d 1014 (Ala.Cr.App.1995). The trial court is in a far better [sic] than this court to rule on the merits of a motion to suppress. Sullivan v. State, 23 Ala.App. 464, 127 So. 256 (1930). The trial court’s ruling [on] the motion to suppress was not palpably wrong.’
“The State contends that the deference of the Court of Criminal Appeals to the judgment of the trial court was unwarranted. It claims that an appellate court should review de novo the trial court’s finding that ‘reasonable suspicion’ was lacking, because the facts in the case are not in dispute. We agree.
“The trial judge made his ruling following a healing at which he heard oral testimony only from Officer Bailey. We stated in Ex parte Agee, 669 So.2d 102 (Ala.1995):
“ Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Odom v. Hull, 658 So.2d 442 (Ala.1995). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment. Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415 (Ala.1994).’
“669 So.2d at 104. ‘Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the Supreme Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.’ Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980) (citations omitted).”
(Emphasis added.)
“The Fourth Amendment does not require that police obtain a warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of criminal activity. United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) (war-rantless search of vehicle valid when police had probable cause to believe automobile contained evidence of service station robbery because automobile matched description given by eyewitnesses). Two rationales underlie the automobile exception to the warrant requirement. First, the inherent mobility of vehicles creates exigent circumstances that make obtaining a warrant impractical. United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Second, there is a lessened expectation of privacy in automobiles because of physical characteristics and pervasive regulation of moving vehicles. Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985); Mewbourn *1002 v. State, 570 So.2d 805 (Ala.Crim.App.1990).”
Seagroves v. State, 726 So.2d 738, 743 (Ala.Crim.App.1998). Under the automobile exception to the warrant requirement, “ ‘[a] warrantless search of a vehicle is justified where there is probable cause to believe the vehicle contains contraband.’ Lykes v. State, 709 So.2d 1335, 1337 (Ala.Crim.App.1997).” Harris v. State, 948 So.2d 583, 587 (Ala.Crim.App.2006). Finally,
“[wjhether there is probable cause to merit a warrantless search and seizure is to be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). ‘Probable cause exists where all the facts and circumstances within the officer’s knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched.’ Sheridan v. State, 591 So.2d 129, 130 (Ala.Crim.App.1991).”
State v. Stallworth, 645 So.2d 323, 325 (Ala.Crim.App.1994).
O.R.J. argues that the officers did not have the authority to search his vehicle because the stop was merely for a noise ordinance violation. However, the undisputed evidence showed that O.R.J. acted suspiciously from the time the officers first stopped him, that he initially walked away from the vehicle even though the officers told him to stay in the vehicle, that he was sweating and appeared to be nervous, and that he lied to the officers about his name and date of birth. Under these circumstances, the officers were justified in entering the vehicle to conduct a wingspan search and to look for identification, Cf. State v. Bailey, 49 So.3d 1245 (Ala.Crim.App.2010) (holding that officers were justified in searching Bailey where Bailey and a female were on a bicycle traveling down the middle of the road and into oncoming traffic, were not wearing safety gear, and could not produce any type of identification); State v. Taylor, 46 So.3d 504, 509 (Ala.Crim.App.2010) (holding that officers were justified in searching Taylor when he was in a high-crime area, was seen walking up to a house that was known for drug activity, and said he did not have any identification, noting that the officer’s “inference that Taylor could be armed was reasonable, and this Court must give due weight to ‘ “the specific reasonable inference which [a police officer] is entitled to draw from the facts in light of his experience.” ’ State v. Hails, 814 So.2d [980] at 986 [ (Ala.Crim.App.2000) ], quoting Terry [v. Ohio ], 392 U.S. [1] at 27 [88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ].”). Further, Jones testified that, after they entered the vehicle, they smelled marijuana. Therefore, at that time, the officers had probable cause to search the vehicle for marijuana. See State v. Gargus, 855 So.2d 587 (Ala.Crim.App.2003). For these reasons, the trial court erred when it granted O.RJ.’s motion to suppress the evidence officers seized during the search and statements he made thereafter. Accordingly, we reverse the trial court’s judgment and remand this case for proceedings that are consistent with this opinion.
REVERSED AND REMANDED.
WELCH, WINDOM, KELLUM, and MAIN, JJ., concur.

. O.R.J. was also indicted for third-degree escape, but that charge is not before us.